The case is Darlene Cooley v. Department of Homeland Security 2008-33-47. Mr. Tooks, we'll be ready when you are. Thank you, your honor. May it please the court. I represent Darlene Cooley in this federal removal case. I'd like to begin my argument in a way I've never done so, but by referring to a passage at least iterated and reiterated in the agency's brief. And that passage basically says that the charge improper conduct upon which Ms. Cooley was removed did not include an allegation of intent. The agency says that twice in its brief, once at page 12 and once at page 20. Based on that argument number one, or that statement number one, I would say that supports our argument that there was no evidence of intent offered before the Merit Systems Protection Board. But the agency also says that since its charge did not include an allegation of intent, therefore the judges, Merit Systems judges, burdening them with the requirement of intent was harmless error because the judge found intent. And therefore, no harm, no foul in the situation. I would respectfully disagree with the agency and argue this. Based on their statement, admission, or what you might call it, that there was no intent involved in the charge here, number one, that proves that there was no sustaining of the charge or there should not have been a sustaining of the charge. This court said recently in Lurie, or Leatherby, that in order to sustain a charge of intentionally submitting false information, the agency must prove two things. One, that the employee knowingly supplied wrong information, and two, that the employee did this with the intention of defrauding the agency. So in Leatherby, this court did not use a title of a charge like falsification or misrepresentation. It said to sustain a charge of intentionally submitting false information. You have to have both elements. And the agency did not succeed under the second element of intent. The second challenge to the agency's default to a position based upon their statement of absence of intent is that before the board, the agency did not make this argument. The agency allowed the administrative judge to conduct a hearing and did not make this argument that hold it, judge, you burdened us with the obligation of proving intent, we shouldn't have to do so. This argument that intent was not a part of the charge has been broached before you and should not be accepted for that reason alone. I'm a little unclear. I understood, and maybe we're not that far apart, I understood that the agency was saying this person was removed for improper conduct. Exactly. And in that sort of charge, intent is not, we don't necessarily have to prove intent. That's what the agency is saying now. It did not say so below, but it's saying that now, yes. And you're saying, are you disagreeing with that premise? Yes, I am disagreeing with that premise and I'm citing letter 34. And was the employee in the other case cited for improper conduct? It was cited for, not improper conduct, it was a more specific charge. But again, it was a charge of a more specific kind of. Well, that's okay. But I understand the agency to also say, well, the AJ here, we're reviewing the AJ's opinion and the AJ did apply the criteria of having proven intent and they found for the agency. Absolutely. And maybe I'm jumping ahead. Number one, I have cited, pardon me, in my brief, information that I think strongly establishes that there was no substantial evidence, really no evidence at all, of the kind of intent we're talking about. Of course, we're not talking about just willfulness or volitional intent. We're talking about purpose and motivation when we use the word intent. So if you have a case and the person, clearly the timesheets or whatever they're doing do not reflect accurate information as to what they were actually doing. Correct. Are you saying that they can't be removed for submitting inaccurate timesheets that you need to, what, prove that the person did it with the intent? I mean, I'm not sure what you're... Well, number one, I'm first deferring to this court's decision in Leatherby. But number two, I'm saying, if I can summarize your statement, if someone, if an employee submits false information, let's just say, I am saying the submission of false information alone cannot be the basis of discipline. That's what I don't understand why. I read the administrative judge's decision, the administrative judge, and said, this false information was so widespread and so many instances of it, that it couldn't have just been inadvertent. You can therefore infer from that, that she did it with the intention of fooling her employer. And what is the matter with that conclusion? Well, number one, the agency is now saying that that wasn't their charge. But number two, there's no evidence of fooling the employer. There's no evidence that... She did it intentionally. Oh, we're talking about... I mean, either she did it knowing she was doing it, or it was inadvertent. That is, I might submit a bill, seek reimbursement from the government, and the amount of reimbursement I'm seeking might be substantially more than what I expended. Well, there could be two explanations. One could be a totally innocent explanation that I made a mistake. But there could also be another explanation that I was doing it with the intention of fooling the agency and getting something I wasn't entitled to. Yes, sir. Again, Judge Friedman, as I responded to Judge Probst, we're talking about two definitions of intent. I don't think the issue of volition or willfulness is involved. Let's assume she did it intentionally. That's not what I understand the court in Leatherbury meant and the court in other cases meant when they talked about intent. Intent in that sense is motivation, and specifically motivation to get some material gain for yourself. So no issue about volitional intent. When you say material gain, it doesn't have to be getting more money, though, does it? Well, it has to be material. Why isn't it material since she was evaluated under some sort of a quota system? Why wouldn't it be material if she could make it appear that she was, in fact, doing more work than she was actually doing? That gets me to my other argument of speculation. I would say that with all due deference, it is pure speculation to say if you take the position she did this, that she did this in order to satisfy a quota. If I may give an example, an extreme example, but an example to explain what I mean by speculation. A person robs a bank. We find out that that person also has a mortgage on his or her home. It would be speculation, in my opinion, to say the person robbed the bank in order to make a mortgage payment. You would need some facts in between to connect the dots. But I don't understand. If it's proven, if it's shown or undisputed that this person filled out these records incorrectly and that what she filled out showed erroneously that she had done all of this work that, in fact, had not been done, aren't there certain inferences you can draw from that? No. You can't, as I was trying to say in my example, you can't because there's an absence of fact. But in this particular case, there's a second reason you can't. Because it is undisputed that she also did actual work on those days that's not argued to be erroneous or improper. So what you would be suggesting is on a specific day, she does work, her share of work. And then for some reason that we don't know, she fills out a form saying she did other work. That's what we're suggesting. She did additional work. I'm sorry? The claim is that she said I did additional work. As I understand what the claim is, if on a particular day she may have decided two cases, the claim is that she showed in her documents that she had decided four cases, which would make her seem more productive. Isn't that? No, that's not the facts. I'm sorry. That's not the facts. We're dealing with two separate documents here. We're dealing, as you know. It's got to be. Among the things they talk about is that for one particular case, she duplicated. You should have only had one entry with respect to a case. And over a period of time, she did the same thing over and over again. So it increased, however you measure output, it increased the ultimate output of her work. No, it wouldn't increase the output to any extent that she would gain anything if the work that she was actually doing on other cases was sufficient for her production. She wasn't working on commission. So she wasn't working. She didn't get more money if she completed more cases. But if she completed more cases, she might have been promoted. We don't know. I understand. And that's just what I'm saying. That's why it's speculation. We don't know. May I ask you a question which isn't clear to me in this joint appendix? Immediately following the notice of proposed removal, there's page after page of these charts. Were these, starting on page A52, was that, these are the actual things, the actual documents that were attached to the notice of removal? Some, but not all. Some, but not all. And some were blank, as we noted in our brief. Let me ask you another more specific question. These listing of all of these cases, page after page, listing cases, are those the cases that she actually acted on? Or are those, all of these, the cases that the government says she made some misrepresentations about? Those are cases, to which you just referred, that the government said she made some misrepresentation on. The cases she actually acted on are found in joint appendix pages 140 to 181. It covers the period February through September. Those are the cases. So that all of the many, looks like several, two or three hundred at least, of these cases are all cases in which the government said she made some misrepresentation with respect to what she did on the case. They argued, yes, except for one. The first few cases, I think they withdrew the argument, but most of them, yes. They alleged that, yes. So the government alleged that she had done this a large number of times. Yes. It just wasn't a few instances. Yes. And during the same period of time, again, we have evidence that she performed actual work that's not disputed on pages 140 to 181. Now. We're into your rebuttal time.  I'll save it, please. That's fine, Mr. Prince. Please have a seat. May it please the court. The charge of improper conduct was supported by substantial evidence, and Ms. Cooley was given proper notice of the charge. Accordingly, we request that the court affirm the decision of the MSPB.  Was there a requirement of intent? Was that implicit in the specification or in the misconduct? Yes. We are willing to concede, in light of this court's case in Leatherbury, that there was an intent requirement implicit in a charge that includes falsification. Even though the charge itself was entitled improper conduct, the actual charged conduct was the falsification of the record. So we are willing to concede that there is an intent element required. However, the MSPB judge considered intent and found that there was intent. I want to be sure. You say there was no intent required or that intent had to be shown? Intent. We agree that intent has to be shown. Intent had to be shown? Yes. But you say it was shown? It was shown. Intent as to what? That she intentionally filled out the forms? That she intentionally filled them out incorrectly? That she had a purpose, which was to ultimately defraud the government or something? What does intent mean? It would be the third one that you said, intent to deceive the government, not necessarily defraud, but to deceive the government, so that she knew that the timesheets were incorrect and that they weren't accidentally incorrect, that she intended to deceive the agency. Well, if we apply that standard, do we have to measure or at least have some notion that there was something that she could benefit from? I mean, does deceive require, intent to deceive require then that you have to show that there would have been something to be gained by her doing this? There's two separate elements under Latterbie. One is the intent to deceive, which it appears Ms. Cooley doesn't dispute that if she in fact created these daily production reports, that there would have been at least an intent to deceive, that it wasn't accidental. But there is another element of personal benefit. Now, that benefit doesn't necessarily have to be a monetary benefit. Here, the benefit was that production, a certain production standard was required for her position. She, by falsifying her daily production reports, was increasing the number of productions. But what if there's one minimum standard and it's clear that she would have met that even in the absence of the falsification? Does that influence our analysis? Well, first of all, just based on the sheer number of errors, it appears that she would not have met it. Now, the agency did not go through and count up whether she would or would have met it, but just based upon how many times she, for example, double or triple counted one case, it appears that she would not have met it. Now, if she did meet it, there are other things that she may have been entitled to in terms of exceeding performance. The performance standard was part of her performance evaluation. If you exceed the performance standard, your evaluation could be better than satisfactory. In that case, for example, she could get a quality step increase. If your performance evaluation is, I believe, excellent or outstanding, then you can get a quality step increase. Well, did anybody analyze these records to show whether or not it would seem you could imply whether she intended to do it if she fixed 40 additional records and that number 40 would have entitled her to something more than she otherwise would get under her performance review or whatever? Is there any analysis in that regard? There was no analysis done in that regard other than, as I said before, just the sheer number of errors. But there was no line-by-line analysis of the errors to determine whether or not she met her performance requirements. But even if she had or had not met them, there were some things she could have gotten by exceeding those requirements. But it would well be to her interest, wouldn't it, if she became known in her agency as someone who consistently exceeded the minimum requirements. In other words, she was super productive, and that eventually might well have helped her in some way in the agency, being promoted, being considered for a better job or something like that. Sure, that's correct, Your Honor. It doesn't have to be. It's not enough to say that, well, she had no reason to do this because she met the minimum standards. Well, even if she met or meeting the minimum standards means she was protected against being removed for not meeting the minimum standards, but if she could appear to be doing better work than was required, that would be to her advantage, I would think. I mean, that at least might indicate some reason why she would do this. That's correct, Your Honor. There are several reasons why she might do it. One would be just meeting the performance, and the other would be whatever she could get from exceeding the performance. So there is evidence of an intent to deceive, and there is evidence of a personal gain in doing this. The other issue is whether she did it at all. There was substantial evidence in the record that she actually was the one who created these daily production reports. There was no evidence presented by her other than a vague allegation of some animosity with her supervisor that there would be any reason for someone else to have created these and planted them in the record. Now, the administrative judge made some credibility findings about the government witnesses, but made no credibility finding about her. But I suppose you would say that implicit in his decision must have been that he didn't find her a credible witness when she denied that these were things that she had submitted. Yes, he did not make an explicit finding, but that would be implicit by finding that the government officials who testified that these were, in fact, her daily production reports. It went out of his way almost to make findings that the government witnesses were credible. Yes, Your Honor, and this court cannot review those credibility findings or has a very limited standard of review of those credibility findings, and the administrative judge did find credible that the government witnesses testified that these were her production reports. For these reasons, we request that the court affirm the MSPB. Thank you. Thank you, Ms. Havasey. Mr. Tooks has some rebuttal time. Thank you. Very quickly, Your Honor. No benefit received was alleged in the charge, and since benefit, as has been admitted, is a part of the charge, is an element of the charge, you can't sustain the charge on implication or speculation of benefit, first by the administrative judge and possibly by this court. The court speaks of it in terms of implication. I respectfully disagree and say it's speculation. There are a lot of possibilities of why, but at least Ms. Cooley deserved to be able to challenge the why that was asserted by the agency. She did. She had a hearing and she got to testify and she could have said, she had the opportunity to testify that I had nothing to be gained by doing this and to put on whatever evidence necessary to establish that. Well, the agency never brought up any, this is the benefit you gained, so she was never able to respond to a specific statement of benefit. I mean, they had nothing. They said absolutely nothing. They left it, I guess, to the administrative judge to imply or speculate she might have gained this way or might have gained that way, but that doesn't give her an opportunity to respond, not at all. One final statement from this court's decision in La Chance v. MSPB, 147, 1367, cited in the agency's brief. This court said there, where the charge label provides no meaningful description of the charge, an agency would be free to prove any conduct generally relating to the conduct described in the specification as long as that conduct could be characterized as, quote, inappropriate, end quote, or, quote, misconduct, end quote. Such a regimen would be inconsistent with due process. We are not talking merely about a harmful error here. We are talking about a due process violation. What was done that denied her due process? One, I'm sorry, one was the notice, not sufficiently specific. The notice, as I understand it, that your objection is not that when you took the notice and the attachments they didn't adequately describe it, it's just that the notice itself incorporated by reference, in effect, the spreadsheets. Yes, sir. Why shouldn't it do that? Would you have been satisfied if instead of a five-page letter, you'd gotten a 30-page letter and after each specification they put in all of the things shown in the attachments? I would have been satisfied if the notice set forth the specifics that are required. The notice drew in a bunch of documents, as we've noted, many of which were flawed. And I believe that denied her due process with respect to specificity. But the more specific denial of due process was what we're talking about here. Her denial of the opportunity to respond to implicit or speculative reasons as to why she might have benefited. She never had that opportunity. Why did she have to respond if all she had to say was I didn't do it and there's no reason on earth why I would have done it because it wouldn't make any difference to me? That would be a support, it seems to me, for her claim that she hadn't done any of these things rather than necessarily a response to the government's contrary contention. I think that we did basically say what you said in response. I didn't do it and I had no reason to do it. My time is up. I thank you very much. Thank you, Mr. Cooks. Case is taken under advisement. All rise.